In the Matter of: Condemnation of Rights of Way and Easements Situate in the Borough of White Oak etc. Terry L. Jordan, Administrator of the Estate of Dorothy L. Williams, Appellant.

Argued March 2, 1983, before Judges BLATT, CRAIG and DOYLE, sitting as a panel of three.

*Terry L. Jordan,* with him *Samuel J. Reich, Samuel J. Reich & Associates,* for appellant.

*Arnold V. Plum,* with him *W. Richard Booth, Plum & Booth,* for appellee.

OPINION BY JUDGE CRAIG, April 25, 1983:

The executor of the estate of a deceased landowner has appealed from an order of the Court of Common Pleas of Allegheny County which dismissed a proceeding filed to contest actions of the Borough of White Oak taken in furtherance of the relocation of a portion of Rankin Road in that borough.

According to undisputed averments, the borough and its agents in June of 1981 had entered onto the land in question and chopped down and removed some eighteen trees. On March 2, 1982, the borough council adopted a resolution authorizing the filing of a declaration of taking for the acquisition of the land. The borough filed that declaration with the Court of Common Pleas of Allegheny County on May 3, 1982 and, on May 13, gave timely notice of that filing to the executor of the estate on behalf of the landowner.

On June 11, 1982 the estate filed this proceeding in the Court of Common Pleas of Allegheny County against the borough, captioning it as preliminary objections against the declaration of taking, apparently under the Eminent Domain Code,[1] but also requesting

---

[1] Act of June 22, 1964, Spec. Sess., P.L. 84, §406, *as amended,* 26 P.S. §1-406.

relief in the form of an injunction to prevent the borough from taking any other action in furtherance of the proposed project "until such time as condemnor is able to come into possession of the land in accordance with the laws of Pennsylvania."

Although the landowner's executor has raised numerous claims concerning the wisdom of the project, those contentions relate to matters outside the record before us and therefore cannot be considered. The actual legal basis for the proceeding rests on the argument that the Borough Code requires that the council should have taken the authorizing action by ordinance, rather than by resolution, so as to afford an opportunity for a hearing before council, as specified by §1731 of the Borough Code,[2] 53 P.S. §46731, governing the "[a]uthority to open streets...."

The common pleas court, treating the matter as involving solely a question of law, proceeded pursuant to argument, without taking evidence, to dismiss the proceeding, concluding that a resolution is sufficient to authorize a declaration of taking because the opening of a street, for which an ordinance is required, is a different matter, which can be attended to separately from the eminent domain taking.

To analyze the issue presented for our review, we can benefit by clarifying some concepts, to avoid confusion.

First, we need not decide whether the councilmanic action here should be labeled as an ordinance or as a resolution. Borough Code §1731 obviously uses the term "ordinance" to indicate an action of legislative character, and Borough Code §1006, as amended in 1976, 53 P.S. §46006, requires every action "of a legislative character", whether it is an ordinance or a reso-

---

[2] Act of February 1, 1966, P.L. (1965) 1656, *as amended*, §§101-3501.

lution, to be published in a newspaper between seven and sixty days before its passage. Hence, the heart of the attack here is that the resolution, not being so treated, was not published in advance of its passage, nor was any opportunity for a street-opening hearing afforded, as is made available under Borough Code §1731.

Second, in order properly to analyze the issue, we must recognize the distinctions which exist among the concepts of

(1)  the *power* to exercise eminent domain, referring to the grant of power made to a condemnor—in this case a borough—with respect to eminent domain acquisitions;

(2)  the *authorization* to proceed with the taking process, namely, the action by which the municipal governing body confers upon the appropriate officials the power and duty to file the declaration of taking;

(3)  the *taking* itself, by means of the filing and notice process under the Eminent Domain Code; and

(4)  the *opening* of the street, making it physically available to public use and travel.

The distinctions among the power to condemn, the authorization to condemn, and the condemnation process itself become apparent with an examination of the wording of the Eminent Domain Code. Section 303 of that Code, 26 P.S. §1-303, declares that the Code is intended "to provide a complete and exclusive *procedure* and law to govern all condemnations. . . ." (emphasis supplied); the same section states the Act is "not intended to enlarge or diminish the *power* of condemnation given by law to any condemnor." (Emphasis supplied.)

Section 402 of the Code, 26 P.S. §1-402, in subsection (b)(3), also treats authorization as a separate concept because it requires, in the declaration of taking, a specific reference "to the action, whether by ordinance, resolution or otherwise, by which the declaration of taking was *authorized*. . . ." (Emphasis supplied.)

The Joint State Government Commission comment to that §402 confirms these distinctions among the concepts of power, authorization and taking procedure by stating:

This section is not intended to enlarge or abridge the *power* of condemnation presently possessed by any condemnor, nor to change the method by which it proceeds to *authorize* a condemnation, such as by ordinance, resolution or otherwise. However, this section is intended to specifically provide that the actual *condemnation* is effectuated only by the filing in court of the declaration of taking pursuant to the required action by the condemnor to provide for the condemnation. . . . (Emphasis supplied.)

Thus we cannot agree with the common pleas court that the mere reference to the word "resolution" in §402(b)(3) of the Code indicates that a non-legislative resolution is proper, when the Code commentary makes clear that the mode of authorization must be determined by reference to the law governing the condemnor, in this case the Borough Code.

Notably, Borough Code §1501, 53 P.S. §46501, which confers the eminent domain power upon boroughs for the purpose of all types of takings, makes no mention of the authorizing method. The briefs have not directed us to any provision in the Borough Code which specifies the method by which borough council is to authorize its officials to proceed under the Eminent Domain Code, at least in any general sense with re-

spect to all types of takings, such as those for public buildings, parks, and the like, as well as for streets.

Counsel for the landowner has been able to point only to the previously-mentioned §1731, which specifies the enactment of an ordinance for the opening of a street, and which, it appears, should be read together with Borough Code §1702, 53 P.S. §46702.

Hence, the pivotal question before us is whether the concept of opening a street is synonymous with the concept of the eminent domain taking by which the interest in the land for the street is acquired.

We conclude that the two concepts are not synonymous.

The Eminent Domain Code, in §201(1), 26 P.S. §1-201(1), defines the word "condemn" as meaning "to take, injure or destroy private property by authority of law for a public purpose." With some contrast in meaning, the Borough Code, in §1701(5), defines "opening a street" as meaning and including

the construction and grading of a street or portion thereof and the act of physically taking possession of an area or laid-out street for the purpose of making the same usable to the traveling public.

Thus the Eminent Domain Code proceeding, to which these preliminary objections have been filed, is the process which consists of the taking or acquisition of the interest in the land, but the opening of a street—which normally would ensue after an interest in the land has been acquired by condemnation, if not dedication or otherwise—consists of the physical process of putting the street in condition for use by the traveling public. Black's Law Dictionary (5th ed.) p. 983 confirms the point by defining the opening of a street as making it passable and available for public travel. Thus, although the opening of a street without filing any declaration of taking could in itself obviously con-

stitute a de facto taking, the converse is not necessarily true; the acquisition of an interest in land for a street can be achieved without necessarily opening a street.

We do not overlook Borough Code §1702 in construing the requirement of an ordinance under §1731. Section 1702 reads as follows:

Any borough shall have the right at any time to take over, by laying out and/or opening the same—

(1) Any street as it appears upon the borough plan;

(2) Any street, or portion thereof, which the borough shall determine to acquire by the exercise of its rights under the power of eminent domain, by following the procedure set forth in the law governing eminent domain;

(3) Any street to which the public shall have acquired rights by constant use over a period exceeding twenty-one years;

(4) Any street or portion thereof, laid out or constructed by any person, which the borough shall see fit to take over or accept as provided in this article.

Although the content of this section indeed indicates that opening a street or a portion of a street, which has been acquired by eminent domain or prescription or otherwise, is one way by which a borough may "take over" the street, no possible reading of §1702 results in equating the opening of a street with the condemnation of it. The section rather appears to underscore the point that (1) laying out, (2) acquiring title by condemnation or otherwise, and (3) opening are distinct and noncoterminous elements within the overall process of taking over a street.

We hence conclude that the ordinance enactment required for the opening of a street is not necessary to authorize the filing of a declaration of taking, pur-

suant to which the Eminent Domain Code itself provides property owners with remedies.

Here the landowner, although questioning the wisdom of the taking, has not questioned its public purpose or propriety other than with respect to the authorizing procedure; we therefore must conclude that the court of common pleas properly dismissed the preliminary objections. Because the landowner's averments with respect to the 1981 entry upon the land cannot fairly be construed as averments that the borough thereby opened the street to public use and travel, or took any substantial physical steps toward doing so, we cannot treat this litigation as constituting, in essence, an equity action to enjoin an opening.

Therefore, we affirm the dismissal of the proceedings.

ORDER

Now, April 25, 1983, the order of the Court of Common Pleas of Allegheny County, dated July 15, 1982, is affirmed.

---

DISSENTING OPINION BY JUDGE DOYLE:

I respectfully dissent. I believe a fair reading of the relevant sections of the Borough Code (Code)[1] evidences an intent to embrace any exercise of eminent domain power necessary for the relocation of a street within the provisions of Section 1731 of the Code, 53 P.S. §46731 which requires the opportunity for a public hearing.

I note first that Section 1751 of the Code provides that any straightening or relocation of a street "shall be effected in the same manner and by the same procedure as provided in prior sections . . . for opening or vacation of streets." 53 P.S. §46751. The land-

---

[1] Act of February 1, 1966, P.L. (1965), as amended, 53 P.S. §§101-3501.

owner here is therefore correct in directing our attention to Section 1731.

Second, I believe that the language of Section 1733, 53 P.S. §46733 makes it clear that a taking of property for street purposes by eminent domain is not an act separate from the opening of a street, but is rather an act constituting a part of the opening of a street, and must therefore be undertaken in compliance with the procedural requirements of Section 1731. Section 1733 governs actions for damages in the opening of a street and provides in pertinent part:

All parties *whose ground is taken in the opening of a street* or a portion thereof shall have three years from and after the effective date of the ordinance opening such street or portion thereof in which to bring an action for damages therefrom.

53 P.S. §46733 (emphasis added). The section also provides that "such damages shall be assessed by a jury of view under the provisions of the law of eminent domain." *Id.* I think it is clear that, in providing the procedure for "opening a street," the legislature contemplated also the taking of land in eminent domain proceedings for such purposes as part of the "opening," and intended the authority to undertake those proceedings to be conferred by ordinance under Section 1731.

I would comment finally that the Borough Code was remarkably complete in providing separately for the planning[2] laying out[3] and opening[4] of public

---

[2] Section 1711, 53 P.S. §46711, repealed by Section 1201 of the Act of July 31, 1968, P.L. 805, 53 P.S. §11201. Planning and laying out of streets is now covered by provisions governing Official Maps at 53 P.S. §§10401-10408.

[3] Section 1721, 53 P.S. §46721, repealed by Section 1201 of the Act of July 31, 1968, P.L. 805, 53 P.S. §11201. *See* note 2 *supra.*

[4] Section 1731, 53 P.S. §46731.

streets. Yet, the opinion of the majority implies an intermediate stage, not included in the planning or laying out of a street, but prior to and distinct from the opening of a street, and asserts that this stage is not provided for in the Code. Considering the comprehensive scheme for the development of streets which is provided in the Code, I think such an oversight by the legislature is unlikely. I believe it was intended that an opportunity for a public hearing should be provided in eminent domain proceedings pursuant to the opening or relocation of a street.